All right, sir, you may come on up, Mr. Johnson. Good morning, and may it please the Court. Appellants have three main points on appeal. The first point is that EMTs Sweeten and Stefak voluntarily submitted to the permit officer Wiley's show of authority, which is unquestionably a Fourth Amendment detention under the clear longstanding precedent of the Supreme Court and of this Court. Second, appellants have definitively overcome Wiley's qualified immunity defense because not only has the detention itself been clearly established in this circuit since at least 2004, but also Wiley himself admitted that he did not have the authority to detain Sweeten and Stefak, and the detention was therefore unreasonable. And third, Wiley is a policymaker for the city of Texas City, both by ordinance and as a designee of the fire chief, as to the protocol of the EMS department. So the city itself may also be liable for his actions as a policymaker. Counsel, did you ever argue that qualified immunity doesn't apply at all because it's not in the discretionary duties of the gentleman to stop people anyway? He's not a patrol officer of any sort in his job duty. So did you ever argue that we don't need to determine whether the elements of qualified immunity have been satisfied because it's not even the right test? Did you argue that? Because that, to me, seems like your best case. So we did not argue that exact reasoning formulated in that way. What we did argue is that qualified immunity . . . Can you not hear? Are we not loud enough? No, you're loud enough. I'm just saying I'm having a hard time just maybe getting the same amount of power that I said. No, no, no. You shouldn't apologize. Keep it at . . . well, I'll let Judge Stewart tell you what you need to do, but . . . Well, yeah, just speak up into the mic. I like to say use your thespian voice as if you're in the theater and the sound will pick up and they'll be able to hear back there in the back row and in the tape. Absolutely, Your Honor, and apologies to my friend on the other side here. But to your question, Judge Elrod, we did not argue that specific reasoning in that specific formulation. What we did argue is that because he is not a law enforcement officer, he is not entitled to the qualified immunity defense because the detention itself was obviously unreasonable. Non-law enforcement officials, as you referenced, have not and never have had the discretion to be able to make detentions at will. It's, as you mentioned, not within the ambit of their duties or their responsibility or their discretion. So we argued that he's not entitled to the defense rather than that the defense itself does not apply. However, because the court reviews this de novo, it can make that determination in that formulation anyway. As to the voluntary submission of authority, Mr. Stefik in his deposition said very clearly that Wiley told them directly, quote, you are being detained. You are not allowed to leave. You must wait right here, unquote. And Wiley was in a marked city vehicle. He had a uniform. He had a badge. And they talked amongst themselves and determined that, yes, this permit officer is detaining us. He's making us stay here. So that voluntary submission to authority is itself a detention. And the Supreme Court in Brennan v. California said that one sitting in a chair may submit to authority purely by not getting up out of the chair to run away, and that's the exact hypothetical here where they were told to stay where they are. The Supreme Court in Hodari D. has said that they prefer a policy where people listen to persons and officers in positions of authority that are asserting that authority and that it's better to err on the side of listening to an officer because if these EMTs had decided to leave anyway or resist the detention at the behest of Mr. Wiley, if he was a law enforcement officer, again, he's not a law enforcement officer, but if he was, it would have been a crime to evade arrest or to resist the detention in that way. So this court and the Supreme Court would caution against making a ruling that would discourage whether they be permanent officers or law enforcement officers. What are you trying to say, a reasonable person would not have felt free to leave? That's exactly correct, Your Honor, that EMT Sweeten and Stefik looked at the situation and made the perfectly reasonable decision that anybody would make that they were not free to leave because they were told, quote, you are not allowed to leave, you must wait right here so that they could be ticketed. In turning to, going into more detail on qualified immunity, not only was the detention itself a clearly established detention by cases like Hodari D., Brenlin, and this circuit in McLinn v. Ard where this court made the legal determination that a voluntary submission to a show of authority is clearly established as a detention, the unreasonableness of the detention is seen in myriad ways. First, in the record on pages 872 to 873, Wiley said no fewer than three times, quote, I cannot detain anybody. He was under no idea that he had the authority to detain anybody, and yet he chose to do so anyway. So it's clearly established the way you're doing it, kind of a backdoor way of saying what I asked you at the very beginning of the argument. Yes. It's clearly established he can't do this because this is not in his discretionary job duties and it says so in Texas law explicitly. Yes, exactly, and the Texas law in question is the Penal Code section 39.03. So you don't need a case that says in this exact situation, I mean, you know, Hope v. Pellissier is kind of on thin ice these days, isn't it? But still good law in some... It's still good law, and this court in Joseph v. Bartlett and the Supreme Court recently in Taylor v. Riojas both have reiterated the point in Hope, which is that you don't, that qualified immunity does not explicitly require cases that are 100% perfectly directly on point. And that really the... In Taylor they said it was because of the obviousness of the circumstance. Are you arguing that this fits into the obviousness category? Yes. There's the obviousness and there's language in Taylor, as you mentioned, that says that basically qualified immunity is overcome when no reasonable officer would have believed that the action was constitutionally permissible. And that's because of the Texas law? That's because of a number of things, including the Texas law and Wiley's own admission that he knew that he was not allowed to make a detention. So he knew, and that's, he's, we assume he's a reasonable officer unless opposing counsel tells us he's not. I assume he's not an officer, but... But if he were an officer, he would be a reasonable officer and he knew he wasn't supposed to do it. And Texas law says he's not supposed to do it. That's, that's... That's your argument in a nutshell? Yes. Yes. That is, that is our argument in a nutshell. In addition to what we talked about, about the fact that he is a non-law enforcement officer and the, the district court below, they, they looked at, they looked at qualified immunity. They said, hey, there's, there's no cases on point that say, you know, an EMS permit officer can't detain anybody, so how are we supposed to find qualified immunity? What do we do with this Monell claim? So the Monell claim, this court in Webb v. Town of St. Joseph made very clear that even in a single incident, a municipality may be held liable if the transgressor is a final policymaker for the city. But how could he be a final policymaker if we just said he's not even really an officer who's supposed to be doing this at all? So it seems like he's way out of his, the rest of your argument tends to say he's way out of his lane. And so he couldn't be the final, you can't have your cake and eat it too, can you? I, I, I understand what you're getting at, Your Honor, and I, I think it's important to clarify the use of the term officer, because what we're arguing is that he's not a law enforcement officer. However, he does have officer in his title. He is the permit officer for the City of Texas City's EMS Department. And that title, he has policymaking authority from two sources. The first source is the City of Texas City Ordinance, section 35.10 subsection H. That gives him the policymaking authority to make EMS Department regulations. Right, but we're not dealing with an EMS Department, we're dealing with an unauthorized illegal stop. Not whether or not they needed a permit, that's not the issue before us. Right, which is where the, the, the second, the second source of his authority comes from. In the record on page 86U1, he mentioned, or he, he went out of his way to make very clear that he is the designee of the fire chief of the City of Texas City. It seems like this argument really runs counter to your other argument. Well, what, where, where the authority comes from is the authority to set EMS Department protocols. So, you know, you, you, you mentioned that, that this isn't a regulation of, of how permits are made, and that's true. However, the, the protocol of whether or not an EMS Department officer or, or somebody that, that has the ability to, to determine whether or not a, an ambulance is up to code, the, there is protocol that, that, you know, written or, or, or unwritten that will determine whether or not they can tell a person to, to stay here, wait until the. He says he didn't believe that he had that authority. So he didn't make a protocol that says, I believe people in my department can do that. He, in fact, he, maybe his argument is that he didn't stop them, but that's already what, you know, but, but that's not a protocol of their department that they stop people. That was him going rogue or else not doing it. Uh, he, yeah, uh, Your Honor, what I would say to that, um, is two things. First, that I, I believe that whether or not it was, uh, a protocol or, or whether or not it was Mr. Wiley going rogue, um, would really at the end of the day is a fact issue that, that should be determined by a jury because, um, this is of course a motion for summary judgment that we're appealing here. So, um, I, I think that a, a jury could absolutely find that, that he made the, the decision to, you know, say under, under protocol, you know, whether it's just himself or, or his employees under the EMS department, um, to say that, hey, I can make people sit here and wait while they come to get ticketed. Um, and the, yeah, the, really at the end of the day, because, because he is that des, designee, because he does set the protocol for that, um, it does create triable issues that a jury can hang their hat on. And, um, speaking of, of having one's cake and, and eating it too, Wiley, um, as you alluded to, you know, did, did say that, you know, he's the designee, he, um, he doesn't have the authority to make detentions, but then he turns around and says that, you know, he, he didn't detain them. And I think it's up, again, this is another fact issue for the jury, um, that he didn't detain them or that, or that he believes, um, whatever he believes about his authority. Um, and because, um, what just, what's the strongest argument you're leaning in on? Uh, with respect to municipal liability or individual? No, back up to, to the, uh, the initial issue on qualified immunity. Qualified immunity doesn't apply because he isn't an officer within the meaning of the law. Uh, if it does apply, the law was clearly established and you're leaning in on this obviousness. I'm just trying to distill. Right, Your Honor. Um, so I, I kind of have, I have two answers to that. The first is that I think both things are true. Um, I, I think that, you know, it's not mutually exclusive to say that, um, because he's not a law enforcement officer, he's, he's not entitled to qualified immunity at all. But it's also, it, that doesn't negate or in any way damage the argument that even if he is entitled, entitled to qualified immunity, that this was an obvious violation of it. Um, that's the first thing. And, and the second thing, um, is, really is the strongest argument is that law enforcement officers cannot, are not, have never been able to make detentions like this. This, the, the novelty in this case is his attempt to do it. But that doesn't make it clearly, that, that doesn't mean that it was an unclear situation. In fact, this is a situation that Mr. Wiley created himself by getting himself into the situation. He, he was under no obligation to make any kind of detention. He had in the past numerous times sent tickets by mail to their employer, Windsor EMS, and had their contact information, had their address, had their mailing address, had showed up in their office in the past. Um, but chose not to go down any of these, these routes and instead chose to detain these EMTs that, you know, they're not deciding which case, which calls they take and which calls they don't. They're just being dispatched. Um, but he chose to detain them anyway and that's how he got into the situation. Thank you for your time, your honors. All right. Thank you, sir. All right, Ms. Bickley. May it please the court. I'm opposing counsel. I think it's important for purposes of, uh, this case to go back and review just a few of the facts. Um, the appellants, Mr. Sweeten and Mr. Stefik were EMTs working for Windsor EMS. Uh, Windsor EMS did not have a valid permit, uh, to provide ambulance services in the city of Texas City. The city had a comprehensive ordinance that regulated the provision of emergency transport services in the city and Windsor had been flouting, uh, the city's permit ordinance by repeatedly dispatching its EMTs into the city of Texas City despite having received cease and desist letters and a number of other, uh, uh, steps that haven't been taken short of issuing citations. Captain Wiley, uh, is a paramedic, one of my clients. Um, he is also the EMS administrator under the EMS, uh, department. He noticed a Windsor ambulance at Seabreeze Nursing and Rehabilitation Center, um, without a permit within the city limits and he called the fire marshal because he knew that he didn't have the authority to issue citations. So he called the fire marshal so that the fire marshal could come out and issue citations. Uh, when Mr. Sweeten and Mr. Stefik, uh, were around their ambulance, he told them, uh, he asked where you're going. They said, you know, we don't have to tell you basically, uh, and we have patient confidentiality, which is true. Don't have to tell them anything. And he said, well, I'll tell you what, I'm going to follow you to your destination. So, uh, Mr. Wiley, Captain Wiley did follow them to their destination, which was... Uh, no more inappropriate than any of us follow anybody else on the street. He had no special authority to do one thing or another. But as Justice, uh, White said in his concurring opinion in Terry versus Ohio, we're free to interact with each other. I've got a constitutional right to question people on the street and they have a constitutional right to ignore me. Was that in part of his job duty to follow ambulances around? Um, I don't think it's expressly listed as part of his job duties. He did. And, and he was waiting for the fire marshal to issue a citation to them for not having an appropriate uh, uh, uh, permit. So when they got there, of course, um, you know, Mr. Stefik and Mr. Wiley could have just written up the licenses, the narrative of what transpired, you know, communicated to the fire marshal, et cetera, et cetera, and on and on. So what was his perceived authority to detain them? You can't leave, get the whatever back in the truck, et cetera. I mean that... I don't think he had any law enforcement related authority. However, uh, and he would say he had no authority to issue a citation. Uh, he said that he told them we're waiting on the fire marshal. Uh, I think viewed in like most favorable to the appellants, they say that he said, you know, you need to wait, you're detained until the fire marshal arrives to issue you a citation. Uh, and I think it's important to acknowledge that he properly identified himself as an EMS administrator and paramedic. He did not misrepresent himself for his authority in any way. Uh, they knew he was not a police officer. They knew he was just a paramedic. He didn't display a weapon. He didn't show any kind of force. Uh, he was... But you said you were not allowed to leave. You must wait right here. That is showing force. That is... You are, you are detained. You are not allowed to leave. You must wait right here. And then he told the head of the Wiley, I mean the head of the Windsor, no, no, no, they are not allowed to leave. They are waiting here for the fire marshal. That is a show of his authority and force to make them stay there. And I would argue that, I would argue that what, uh, authority are they voluntarily submitting to? They've said that they were voluntarily submitting to authority. It was, was it purely verbal? Here, because there was no other sort of restraint or force shown, it was purely verbal. I can find, and neither could the district court find, nor, and uh, appellants have admitted they have been able, unable to find any case involving a pure verbal authority being exercised or verbal directions, uh, responding purely to verbal directions without any other show of force outside the law enforcement context constituting a seizure under the Fourth Amendment. Well he is acting... That's because people who don't have the authority to detain people aren't detaining them. Maybe that's why there aren't any cases of that. Well, it's, uh, we don't find any cases relating to people, uh, direct, you know, responding to directions or instructions, uh, because, and I believe it's partly because it would convert almost any encounter with a public, um, employee into a potential Fourth Amendment um, claim if they gave them instructions. Sit here. Uh, wait for the mayor to come out. I'm just trying to make it seem like this is just a John Q. Citizen in a suit and tie or dungarees and a, you know, short pants who tells these people you can't leave. Come on. I mean, this guy's got his uniform. Yes, yes. He's not the fire marshal, but I mean, he's right there. He uses language that's assertive. You can't leave. You must stay there, whatever as Judge Elrod said. I mean, he is asserting, you know, you can't leave. You got to stay here. So, I mean, that's not the norm, Council Officer says. I mean, sometimes this guy just writes the license number and mails the ticket. So here he's, you know, pushing himself to tell them they could leave. So why would ordinary citizens, particularly these people, feel that they weren't seized or that they could just leave while it says they could have left? I mean, why? And the Mr. Stefik and Mr. Wiley, uh, Mr. Sweeten specifically talked about. They said, why, we don't have to wait here based on what this paramedic said. They, they talked among themselves about this. Why do we have to wait here? We can just take off. So they didn't reasonably believe there was any sort of authority, uh, that they were submitting to at that time. They decided to do it. They didn't want to get in trouble maybe with their supervisors or anybody else, but they didn't, but they, they specifically understood that this is not someone who had law enforcement authority. Why is your client entitled to your, not your city client, but your individual paramedic client, entitled to qualified immunity at all? Because as you just pointed out to us, he had no discretionary authority to stop people. So why would he be entitled to qualified immunity at all? Why would we be doing this exercise? Does have discretionary authority to investigate permitting issues under the ordinance. He does have some discretionary authority there. Um. To stop, he does not have discretionary authority to stop people and detain them, uh, as part of. No, and he didn't, excuse me. He didn't in this circumstance. He didn't stop anybody. He walked up on somebody that was already stopped, followed them and. He followed them. Does he have discretionary authority in his duty, his job duty? I thought you said he could just do it as a citizen when I asked you earlier. I didn't know that was part of his job duty to follow ambulances around. No, I didn't. I'm not saying necessarily that it's explicitly part of his job duties. Is it in his discretionary authority? Was he acting in his discretionary authority when he followed them and then detained them? Was that in his discretionary authority for his job duties? I believe that it is within his discretionary authority to make inquiries concerning permitting and he does have investigation. Inquiries is, are you saying as part of making inquiries that you can follow people and detain them? That's a separate question. I don't think he has any special authority to follow people other than what any of us ... He has special authority. I asked if he had discretionary authority in his job duties to do that task. Not expressly in his job description of that kind? Well, it's discretionary. Is it within his discretion to follow people ... I believe so. ... and detain them as part of his job duties? I don't think he has any authority to detain people, forcibly detain them. So he can follow them. Now he has discretionary authority to follow people as part of his job duties. We'll separate them out. I believe so. I mean, just as part of his investigative duties. Okay. Does he have discretionary authority to detain people as part of his job duties? If in conducting an inspection, I would say he did as part of his inspection duties. He has discretionary authority as part of his job duties to detain people, even though Texas law says he can't. I don't believe Texas law says that he can't. I think he believes he can't because he's not a law enforcement officer and ... Okay. Thank you. ... but in any event, the doctor ... What is the import of the Texas law that's been cited to us? What is the import on the analysis we're making? For purposes of our analysis, I don't think it has any relevancy because in order to overcome qualified immunity, you have to show a clearly established that Mr. Wiley was violating a clearly established federal statutory or constitutional right, not a state statute. So I don't think it would otherwise federalize sort of the analysis of qualified immunity in Fourth Amendment. So I don't think it has any viability in this circumstance. It doesn't set out a clearly established federal right. And appellants, again, have themselves cited to no cases under remotely analogous facts under a Fourth Amendment seizure context, which did develop under a police context where somebody is submitting to police officers or DEA agents or some law enforcement agency telling them to do something. Here, we're not dealing with a law enforcement agency. And Mr. Stefik and Mr. Sweeten well knew that this was not law enforcement, that they didn't know, why should we stay here for a paramedic? And moving on just briefly to the city liability, as the Court is aware, municipal liability for a constitutional tort can't be predicated on respondeat superior. And instead, in Monell, it has to be predicated on official policy or custom promulgated by the municipal policy holder, which is the moving force behind a constitutional violation. And in this case, as this Court just held in the Utley v. City of Houston case, where there has been a failure to identify an unconstitutional policy or custom on the part of the city, the inquiry really stops there. So we agree that there are three ways to go about showing that. Written policies or ordinances that violate the Constitution, widespread practice that is so common that it's fairly attributable to the city, or a very rare circumstance when a final policymaker, him or herself, performs an act that violates, on which the 1983 violation is predicated. In this case, there was no evidence that Captain Wiley was a final policymaker in any way. And no case holds that someone in his position is a final policymaker. And under this, I think the only evidence is that the City Commission for Texas City was the final policymaker that reserved into itself the right to make regulations or to finally approve regulations, to issue ordinances, to be the governing body of the city, and that day-to-day operation authority will not suffice for purposes of municipal liability. Do you have any case law that applies qualified immunity in the context of non-law enforcement personnel? I will be happy to submit supplemental authorities on that. I do know that those exist. Is that in the briefing in this case? Was it briefed to the district court or to us? I cannot recall at this time. I believe that does exist. Thank you. And I'm happy to submit a supplemental, some authorities on those. In any event, the operational or day-to-day operation authority will not suffice to constitute final policymaking authority. So assuming qualified immunity applies, what's your best argument, best case that Wiley is entitled to qualified immunity? Since we've sort of drilled down, there's nothing within his discretionary authority, seemingly, to do what he did. So what's the best case that supports the grant of qualified immunity here? I think the best rationale supporting qualified immunity is there is absolutely no case law that is clearly established that shows Fourth Amendment liability on facts even remotely similar to those in this case. And since the contours of the right, the Fourth Amendment right, have to be so clear that a reasonable person or reasonable official in Captain Wiley's position should know that he's violating the right, given that there is no authority holding that under facts in the neighborhood of our facts are a violation of the Fourth Amendment or constitute a seizure in violation of the Fourth Amendment, I believe that qualified immunity should apply. Was Captain Wiley a reasonable official in this case? I believe he was a reasonable official in that he was not purporting to issue the citations himself. He was acting within the scope of his authority at all times. He was instructing people to wait so that the person with the proper authority could issue a citation. But he told them that they were detained. You can see that. I believe the evidence is that one of the plaintiffs said that he was told he was detained. And then he said he knew. He knew at the time he didn't have any authority to detain anybody. Didn't he say that he knew he didn't have authority? He did not believe he could compel somebody to, yes, he did not believe he could compel somebody to remain. If he is the reasonable authority and he believed he did not have that authority, then why doesn't that completely undercut your clearly established law of wrong? That's where I was going. Understood. He was instructing somebody to stay and wait for the proper authority to issue the citations. What I would say is that I can find no case law that says a verbal instruction or submission to a verbal instruction only outside the law enforcement context constitutes a Fourth Amendment seizure. So, there is no case law that holds that. So this entire encounter lasted 15 to 30 minutes at most. And at the conclusion, they were issued a citation and left. I know that there are some Fourth Amendment cases that arise in the school discipline context and in the social services context where children are forcibly removed from the home or people are forcibly detained by school officials as part of discipline. But in all of those circumstances, there is a physical compelling or a physical threat of detention involved or a physical removing of children from the home pursuant to some order. And those circumstances are clearly distinguishable from what we have here, which is a purely verbal instruction by a non-law enforcement person. And for those reasons, Your Honors, we would respectfully request the Court affirm the summary judgment in favor of the appellees. All right. Thank you. Thank you, sir. I appreciate it. Mr. Kallinen, you're doing rebuttal. Good morning, Your Honors. The testimony was that Sweetin and Stefik were detained for 30 full minutes. Why would anybody who was on the job, has patience, why would they stick around anywhere for 30 minutes unless somebody had the authority to detain them or they thought reasonably that they had the authority to detain them? And these are permit officers that permit the very business that they're in. Another reason why they would think they had authority. And the vehicle that is driven up, you've probably seen fire department vehicles around. They got their emblem and he's got a badge and he's got the uniform and he tells them that he can't be detained. Now in Texas, if you are told by an officer, even if there's absolutely no reason, no reason whatsoever to stay in a certain place and you run, like in a vehicle, it's a felony. It does not matter that there is no reasonable suspicion you've committed a crime. It doesn't matter. And you will be charged with the felony evading because an officer told you or you knew that an officer wanted you to stay there. That's evading in a motor vehicle. Similarly with resisting arrest, it is illegal to resist a false arrest in Texas. That wouldn't apply here because he's not a law enforcement officer. But they reasonably thought he might have had some authority. And just imagine this, what are you going to do? Are you going to risk getting a felony or are you going to just, you know, stick around because, you know, there's potential authority? Three times in the deposition, when I asked him, when he was queried, Mr. Wiley was queried about detention, he said the exact words over and over, I cannot detain anybody. I cannot detain anybody. I cannot detain anybody. He said it three times in answers to the questions. Regarding verbal authority only, first of all, he took his huge vehicle, SUV, and blocked Stefik and Sweden twice. You get a big vehicle blocking you, that's not speech only. Also his tone, the testimony was his tone was very aggressive and also he said, eventually he's going to get somebody else to come over. These are EMS fellows, they're not law enforcement officers themselves. It's very reasonable for them to believe that they were detained and they were not free to leave. The reasonable person would not leave, not only because of these potential criminal charges of felony evading, even if there was no reason for it. So, and the fact that they actually discussed it, what does that mean? Means they were thinking about it, and they stayed for 20 minutes, so they must have thought in the end that after discussion, they better stick around. There's no, so in this case, and regarding the best cases for that about the verbal, verbal is enough, although there was much more, is the Hodari case, 1991 Supreme Court case, as well as the Brennan versus California Supreme Court case in 2007. So in regards to qualified immunity- What's the argument, the strongest argument you're holding on to, that qualified immunity doesn't apply to him because he wasn't acting in any discretionary capacity, or even if qualified immunity applies, the law was clearly established and he violated, or this is obvious as he says. Which of those are you trying to get the home plate on? I'm always a fan of obviousness, because these are people who, they know what they're doing, this is their business, Wiley was this permit officer who- After Taylor v. Rios, there are not a lot of obvious cases out there, there are people making that argument, but there's not a lot out there, so you haven't identified some other case, so assume we don't find this fits in that prison scenario, what the Supreme Court says, this is so obvious, ya, ya, ya, where are you? Well it's out of his discretionary function, so I think in that particular case, along with his testimony three times, I cannot detain anybody, I think maybe this is that rare case where obviousness fits in, however I believe that the cases of Hodari and Brenlin clearly show that in cases like this, there is no qualified immunity. Alright, thank you Mr. Gallin, I believe we have your rebuttal argument, thank you Mr. Johnson, Ms. Bigley, we appreciate it.